[S. F. No. 2550.   Department One. — September 13, 1901.]

**JOHN FARNHAM, Appellant, v. P. BOLAND, Respondent.**

134  151
136  271
136  275
136  277
136  672

134  151
138  19
e138  20

134  151
141  275
141  414

134  151
142  89
e142  503

134  151
143  342

ELECTION BALLOTS — IDENTIFYING MARKS — PURPOSE OF STATUTE. — The purpose of the provision of section 1215 of the Political Code, that "no voter shall place any mark upon his ballot by which it may be afterwards identified as the one voted by him," is to destroy the identity of the ballot, and thereby maintain its secrecy, which is one of the cardinal principles on which the present ballot law is founded. It is intended to cover any mark made by the voter which may serve as a distinguishing mark, whether made with the legally authorized stamp, or with an ordinary pen or pencil.

ID. — USE OF AUTHORIZED STAMP — COMPLIANCE WITH LAW. — If, in the use of the authorized stamp, the voter keeps within the law, the ballot will not be rejected, even though the stamp has been so used that the cross may be an identifying mark, and the ballot should not be rejected for trivial reasons; but the court will do the best it can to hold the voter to a strict compliance with the statute forbidding identifying marks with the use of the stamp.

ID. — UNAUTHORIZED USE OF STAMP — BALLOTS REJECTED. — Ballots must be rejected where, by an unauthorized use of the stamp, a cross is placed in a square opposite which there is no candidate's name, or upon a line between two squares, each of which is also properly marked, or where two crosses are placed after a candidate's name, either one within the square and one outside of it, or two within the square, whether separate or interlaced. Each and all of such marks are identifying marks by the voter, prohibited by the statute.

ID. — BALLOTS WITH STUB OR NUMBER ATTACHED — CARELESSNESS OF ELECTION OFFICERS — VOTER NOT PREJUDICED. — The law only forbids identifying marks made by the voter; and ballots cast with the stub attached, which should have remained in the ballot-book, or bearing the number which it was the duty of the election officers to remove, should not be rejected. The malconduct or carelessness of the election officers in the discharge of their duty cannot prejudice the voter, where a fair election and honest count are not thereby prevented.

ID. — ELECTION CONTEST — REVIEW UPON APPEAL — EXCEPTIONS — ADMISSION OF BALLOTS FOR APPELLANT — PRACTICE — DECISION. — Upon appeal in an election contest, where the appellant assigns error in the admission of ballots cast for the respondent, it is proper practice for the respondent to have inserted in the bill of exceptions the exceptions taken to the rulings of the court in the admission of ballots cast for the appellant. Where the whole case is not presented in the record upon the appeal, if error appears in favor of the appellant, this court, in deciding the case, will not render or order final judgment, but will remand the case for a new trial.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion.

Carlton W. Greene, and Burbank G. Somers, for Appellant.

M. C. Hassett, and Walter J. Thompson, for Respondent.

GAROUTTE, J.—This is an election contest, brought under the provisions of sections 1111–1127 of the Code of Civil Procedure, and involves the office of public administrator in and for the city and county of San Francisco. Contestant, Farnham, appeals from a judgment rendered against him, whereby it was held that Boland received 203 votes more than Farnham received, and was declared elected. Various rulings of the court, arising upon the admission in evidence of certain ballots for Boland, are urged as error upon this appeal.

In addition to other matters, section 1215 of the Political Code declares, "No voter shall place any mark upon his ballot by which it may be afterwards identified as the one voted by him"; and the fundamental objection, going to all of the ballots here under consideration, is made, that it appears from an inspection of them that the law above quoted has been violated by the voter, and for that reason it is insisted they should have been rejected, and not counted. The purpose of this provision of the law is to destroy the identity of the ballot, and thereby maintain its secrecy; for secrecy of the ballot is one of the cardinal principles upon which the present ballot law is founded, and that principle thoroughly permeates the entire body of the act.

Some difficulty arises in declaring the rule by which the ballots here under consideration should be tested. The law itself is largely a recent importation from a foreign jurisdiction; and while it is in substance found upon the statute-books of many states, sufficient time has not yet elapsed since its importation, for the courts of all those states, in the judicial construction of its many and ·complex provisions, to stand upon common ground. At this time the decisions of the various state courts upon the construction of the act are not at all uniform, and therefore those decisions, as guiding lights to the true rule of construction, are not valuable aids, and will not be largely relied upon here. Most of the questions pre-

sented upon the inspection of these ballots have been considered, in principle at least, by the former decisions of this court, and the law of those decisions will in a great measure form the test by which these ballots will be tried. The statute says: "No voter shall place any mark upon his ballot by which it may be afterwards identified as the one voted by him." This language is broad. It is broad enough to cover any mark made by the voter which may serve as a distinguishing mark; and this distinguishing mark may be made with the legally authorized stamp, equally the same as with an ordinary pen or pencil. And while the law may be too weak to reach all *distinguishing marks* which may be made with the authorized stamp, still the court will do the best it can to hold the voter to a strict compliance with this provision. If in the use of the stamp the voter keeps within the law, then the ballot will not be rejected, even though the stamp has been used so that the cross made may be an identifying mark. Ballots should not be rejected for trivial reasons; at the same time, it is only by a compliance with this law that the evils may be met and overthrown which were the cause of its birth. Under express constitutional authority, the legislature has the power to enact all reasonable regulations for the protection of the purity of the ballot. Those regulations the voter is bound to know, and bound to abide by; and if he does not abide by them, his exercise of the right of franchise may be denied him, and no one of his constitutional rights invaded. In *Tebbe* v. *Smith*, 108 Cal. 108,[1] and *Lauer* v. *Estes*, 120 Cal. 654, the law governing this question of identifying marks is fully declared, and is strictly in line with the general observations the court has above advanced; and keeping in view the principles declared in those cases, we pass to an inspection of the ballots here under consideration.

Under objection No. 1 we find a class of ballots counted by the trial court, where a cross is placed in a square, there being no candidate's name opposite the square. Such a cross is not in a legal place. The voter had no right, under the law, to place it there, and it is a distinguishing mark, which demands the rejection of that class of ballots. Under objection No. 2, a cross is found upon a class of ballots, directly upon the line dividing the two squares. There is also a cross in each of said

[1] 49 Am. St. Rep. 68.

squares, after the respective candidates' names. Thus there is found a cross not authorized by the law, which may well serve as a means of identifying the ballot, and ballots so marked should be rejected. Under objection No. 3, the court finds a class of ballots where two crosses are made after the candidate's name, — one within the square and one without the square. There is no simpler way of evading the provision of the law than for a voter to mark his ballot in this manner. These crosses, so placed, are clearly identifying marks, and all ballots so appearing should be rejected. Under objection No. 4, the court finds a class of ballots with two crosses in the square. Upon some of these ballots the crosses are entirely separate, and upon others they are interlaced and joined in many different ways. The law says the voter shall stamp a cross after the name of the candidate, — not two crosses or three crosses, but "a cross." Two crosses in the square is no less a mark of identification than two crosses, one without and one within the square. An allowance of this practice would furnish a simple expedient by which the law could be violated. Two crosses in the square is not a legal mark upon the ballot. The law only contemplates one cross, and therefore ballots so marked should be rejected.

It is claimed that the trial court should have rejected ballots which had the stub attached to them, — a stub that should have remained in the book from which the ballots were taken. We hold that these ballots were properly counted; and likewise those ballots were properly counted which the officers of election placed in the ballot-box without first tearing therefrom the numbers attached. It is quite apparent that these violations of the law arose from the carelessness of the election officers. Such carelessness or malconduct upon the part of those officers may render them liable to severe penalties; but that is all. The law as to identifying marks refers to marks made by the voter, and it is only marks made by him that demand the rejection of the ballot. After citing many cases to the point, this court said, in *People* v. *Prewett*, 124 Cal. 13: "The principle underlying these decisions is, that the rights of the voters should not be prejudiced by the errors or wrongful acts of the officers of election, unless it shall appear that a fair election and an honest count were thereby prevented."

Appellant asks for judgment in his favor, upon the record

before the court, claiming that this being an election contest, and therefore largely a summary proceeding, it should be finally disposed of without further delay. The record brought here upon appeal fails to disclose exceptions taken to the rulings of the court in the admission of ballots cast for appellant. The proper practice would have been for respondent to have inserted those rulings and exceptions in the transcript by way of amendment to the bill of exceptions. If that had been done, possibly it may have appeared that the errors of the trial court relied upon by appellant here were without prejudice. ( *Webster* v. *Byrnes*, 34 Cal. 277.)    Yet, even conceding power in this court to order the trial court to enter judgment in favor of appellant, — a practice which must be recognized as an exception to the general rule, where findings of fact are set aside as unsupported in the evidence, — still the court is not inclined to make the order in this case. In the many recent election contests that have been presented here by appeal, it appears to have been the rule, without exception, to return the cause to the trial court for further hearing, when the judgment has been reversed, and we will not depart from that practice in this case. At the same time, in so doing, the action of the court must not be construed as establishing a precedent which will be followed in every case of this character brought here upon appeal.

For the foregoing reasons the judgment is reversed and the cause remanded.

Harrison, J., and Van Dyke, J., concurred.

Modification of judgment denied.

Beatty, C. J., dissented from the order denying a modification of the judgment, and filed the following opinion on the 14th of October, 1901: —

BEATTY, C. J. — The appellant has petitioned for a modification of the judgment herein. He asks that instead of remanding the cause for a new trial, this court should direct the entry of a final judgment in his favor, and I think he is clearly entitled to that relief, upon the record as it stands.

The substance of the material findings of the superior court is, that, according to the canvass by the election board, the respondent received 24,018 votes and the appellant 23,753, but

that 683 marked and otherwise illegal ballots had been improperly counted for respondent in making that canvass, and 621 marked and otherwise illegal ballots improperly counted for appellant, so that, after deducting the ballots thus improperly counted for the respective parties from the vote as returned, the true count showed that respondent had received 23,335 votes, and appellant 23,132 votes, leaving the respondent a plurality of 203 votes.

Such were the findings of the superior court, but this court, in view of the sole and uncontradicted evidence in the case, — the ballots themselves, — decides that about fourteen hundred ballots counted for respondent by the superior court were illegal and void. It decides, in other words, that the finding in favor of the respondent is erroneous, and wholly unsustained by the evidence, to the extent of fourteen hundred votes, and that he really received twelve hundred legal votes less than appellant is found to have received. On the findings as thus corrected, the appellant is entitled to the office, and to a final judgment in this court. But he is deprived of that relief because the record does not contain the exceptions of the respondent to the rulings of the superior court admitting or rejecting ballots, and it is *surmised* that if these exceptions were in the record it might appear that erroneous rulings were made upon ballots objected to by respondent, but counted for appellant, sufficient in number to neutralize or overcome the errors which we have held were committed in counting illegal ballots for respondent. I do not think we are justified in acting upon such a supposition. It does not appear, even indirectly, that respondent took a single exception to any ballot counted for appellant, and it is only indirectly shown that he excepted to the rejection of any of the 683 ballots counted for him by the election board. These exceptions are not contained in the record, and cannot be presumed to have possessed any merit; but conceding every one of them to have been well taken, they were not sufficient in number to alter the result. The opinion of the Department holds—and in so holding is sustained by both reason and authority—that proper practice required all exceptions of both parties to be included in the record, in order that this court might give a final judgment in favor of the party entitled to the office. It appears that the appellant was desirous of having the record so made up, but that the respond-

ent made no effort to have his exceptions included, and while it is true that the trial judge in settling the bill of exceptions erroneously held that the respondent was not entitled to have his exceptions appear, it is also true that the law gave him a summary and effective remedy to compel their allowance; and the fact that he made no attempt to avail himself of that remedy deprives him of the right to ask this court to indulge the surmise that he may have had exceptions to ballots counted for appellant sufficient to overcome the plurality which appellant appears to have received.

The cases cited in the Department opinion to show that the practice of this court has been to remand election contests for new trial upon reversal of the judgment of the superior court, do not sustain that disposition of the present case. In the cases cited, this court could not have given final judgment in favor of appellants without making affirmative findings of fact that had not been made by the trial courts. In this case the fact is found, that appellant received 23,132 legal votes, and the finding that respondent received 23,335 legal votes is simply held to be unsustained, to the extent of some 1,400 votes, by any evidence. To make the proper deduction in such case for want of evidence, is not to make a finding, and the deduction being made, the appellant appears to be clearly entitl. d to a final judgment on the findings. This being so, such a judgment alone is a proper one, and more especially in an election contest, where the result of ordering a new trial must inevitably be that the term to which the appellant appears to have been chosen will have expired long before a new trial can be had.

For these reasons I dissent from the order of the court denying a modification of the judgment.