[L. A. No. 4922.  In Bank.—July 17, 1917.]

STEPHEN A. D. CLARK et al., Appellants, v. CITY OF MANHATTAN BEACH (a Municipal Corporation), and the BOARD OF TRUSTEES of Said City, Respondents.

MUNICIPAL CORPORATIONS—IMPROVEMENT BOND ELECTION—ELECTION LAW.—Section 1142 of the Political Code (as amended by Stats. 1915, p. 1851), requiring publication of notice inviting applications for positions as election officers, has no application to municipal elections on the question of the issuance of bonds for improvements.

ID.—BOND ELECTION—VALIDITY OF.—A bond election is not rendered invalid by the fact that two of the members of the election board were ineligible by reason of their having been employed by the city within ninety days prior to the election at which they served.

ID.—TIME FOR OPENING POLLS—DELAY.—Delay in opening the polls at 6:10 A. M. instead of 6 A. M. is trivial, without injury to any voter, and does not affect the validity of the election.

ID.—SINGLE SCHEME OF IMPROVEMENT SUBMITTED AS AN ENTIRETY—MUNICIPAL WHARVES.—A proposition to incur an indebtedness for constructing one wharf at the foot of a certain street and a second wharf at the foot of another street, as parts of one general plan of improvement, is not required to be submitted to the voters as distinct and independent propositions, but may be submitted as an entirety.

APPEAL from a judgment of the Superior Court of Los Angeles County.  Fred H. Taft, Judge.

The facts are stated in the opinion of the court.

C. Franklin Baxter, for Appellants.

Frank L. Perry, City Attorney, and Bordwell & Mathews, for Respondents.

LORIGAN, J.—Plaintiffs, as property owners, sued for an injunction to prevent the issuance and sale by defendants of ninety thousand dollars of municipal improvement bonds, and from a judgment in favor of defendants, plaintiffs appeal.

The facts show that Manhattan Beach is a city of the sixth class; that on November 7, 1914, its board of trustees determined that public interest and necessity demanded that the said city incur a bonded debt of ninety thousand dollars for

the construction and completion of wharves upon or adjacent to the waterfront of said city to be owned and operated by said city, one to be located at the foot of Center Street of the estimated cost of seventy thousand dollars, and one at the foot of Marine Avenue of the estimated cost of twenty thousand dollars; and that an election to vote upon the proposition of incurring said indebtedness in the amount of said ninety thousand dollars be held on January 20, 1916. An election was accordingly held at which 311 votes were cast; that 230 thereof were cast in favor of the issuance of said bonds, and 78 against their issuance. The city was proceeding to issue and sell said bonds when this action was brought.

A number of grounds for a reversal are urged by appellants.

First. They insist that the board of election was illegally constituted because not appointed according to law. Their counsel does not say anything further on this point than to make it; he does not attempt to point out why or how in any particular the appointments were not all according to law, and, hence, for this reason we might well ignore any consideration of it. But as in another part of his brief he makes reference to the fact (which is true) that the board of trustees "did not publish, advertise, or receive any petition of any election officers signifying their willingness or consent to act as such officers of election" in compliance with section 1142 of the Political Code of 1915, it may be assumed that noncompliance with this particular section is what, in the opinion of counsel for appellants, rendered the appointed board an illegal one. While the section referred to provides for advertising or calling for applications to serve as officers on boards for certain elections, it has no application to municipal elections such as was held here. That was definitely decided in *Booth* v. *Mott*, 169 Cal. 677, [147 Pac. 953], involving this very point, and nothing further need be said about it.

Second. The next point, taking it up a little out of its order as made by appellants, but properly to be considered here as related to the one we have just been considering, is that the board of election was particularly chargeable with being illegally constituted because two of its members had been employed by the city of Manhattan Beach ninety days prior to this bond election at which they served. The trial

court found as a fact that they had been so employed, but held that this did not affect the legal integrity of the election board or the validity of the election. This ruling was proper. While it is true that section 1142 of the Political Code provides that persons who have been employed by a city are not eligible as members of an election board at a municipal election held within ninety days of such employment, it has never been held that the simple fact that they were nevertheless appointed and acted as such rendered the election invalid. This very point was raised in *McCarthy* v. *Wilson*, 146 Cal. 323, [82 Pac. 243], the court saying: "Conceding that the evidence showed that certain members of these boards [election boards] came within the inhibition of section 1142 of the Political Code, and were therefore ineligible, they nevertheless did act, and were at least *de facto* officers of election, and as such their acts were valid in the absence of fraud, even though they did not possess all the qualifications requisite for the office. Certainly no principle of law would warrant the disfranchisement of the voters of a precinct on any such ground as the one relied on as the basis of this objection." See, also, as declaring this same principle, *People* v. *Prewitt*, 124 Cal. 7, [56 Pac. 619] ; *Davis* v. *Grunig*, 143 Cal. 342, [76 Pac. 1102]. Here the board of election consisted of six members, including the two disqualified members. It is not alleged or pretended from the evidence that there was any fraudulent conduct on the part of the election board or of any of the officers of election. The claim is simply that an invalid election followed solely because there were two disqualified election appointees appointed on the election board, and notwithstanding it appears that there was not the slightest unfairness for that or any other reason in the conduct of the election. This contention the law will not sanction.

Third. It is claimed that the polls were not opened on time. This point is trivial. The law directs that the polls shall be opened at 6 A. M. They were, in fact, opened at 6:10 A. M. The slight delay was occasioned through the key of the polling place having been mislaid, and such delay worked not the slightest injury to any voter. (*Kenworthy* v. *Mast*, 141 Cal. 268, [74 Pac. 841].)

Fourth. It is next contended that the form of the ballot submitted at the election did not allow the voters to express their choice. But here again we are left to conjecture in what

respect counsel for appellants thinks the form of the ballot was improper or unfair, because he makes no attempt to point out in what particulars he claims it open to these objections. He contents himself with simply making the point and citing the case of *Clark* v. *Los Angeles,* 160 Cal. 317, [116 Pac. 966]. We take it, however, on account of his citation of the Clark case and the discussion in the brief of counsel for respondents, that what counsel for appellants claims is that the proposition to incur an indebtedness for constructing a wharf at the foot of Center Street and one at the foot of Marine Avenue should have been submitted to the voters as distinct and independent propositions, so that they could express their choice of either without affecting the other, instead of compelling them to vote on the municipal wharf improvement as an entire scheme embracing these two wharves as integral parts thereof and the bonded indebtedness therefor to be incurred or re-jected as an entirety. There is nothing in the Clark case to support this claim of appellants. It discusses the matter of when subjects should be separately stated on the ballot because distinct, unrelated, and independent of each other and when not. It lays down valuable rules to be followed in proposing to voters the incurring of municipal indebtedness, but suggests nothing which could support the present claim of appellants. In fact, it sustains the submission of the proposition of municipal improvements as an entirety in the manner just as submitted here. The proposition for this Manhattan Beach municipal wharf constituted a single scheme, of which the several wharves mentioned were to constitute a general plan. It was not to consist of either, but of both. How far the municipality should proceed to improve its waterfront by the construction of wharves was a matter addressed to the discretion of the city to be indorsed or rejected by the voters. It could adopt one general plan or scheme which might embrace the construction of several wharves as necessary to effect the single purpose of adequate harbor improvement, and have that improvement provided for and constructed under one bonded indebtedness. The proposition submitted here for the action of the voters was no different in principle from that submitted in the case of *Oakland* v. *Thompson,* 151 Cal. 576, [91 Pac. 387]. In this latter case the proposition submitted was to acquire several distinct and widely separated parcels of land for park purposes. The same point was made there

as here, that the voters should have been allowed to vote as to each separate tract of land and not for or against the acquisition of all as a single unit. In sustaining the right of the city to submit the question of the acquisition of the several parcels to the voters as a single scheme or unit, the court said: "The scheme is a single scheme, the purpose a single purpose. . . . The law does not contemplate, much less compel, that each parcel of land which may be desired for a park shall be voted upon separately. . . . The plan is a single plan for the acquisition of all these lands for park purposes. . . . Certainly the plan adopted was within the discretionary power of the council under the law, and it enabled every voter to express himself for or against the whole proposition. More than this was not required." The proposition submitted here was intended to embrace a whole scheme for municipal wharves for the city, and upon the authority of the case just referred to was properly submitted to the voters in the manner that it was, as a single unit, without a violation of any of the rights of appellants.

A couple of other points are made for a reversal but they are so entirely without merit as not even to warrant mentioning.

The judgment is affirmed.

Melvin, J., Shaw, J., Sloss, J., Lawlor, J., Henshaw, J., and Angellotti, C. J., concurred.